533. Mr. Grady, when you are ready. Yes, ma'am. Good morning. My name is Keith Grady. I represent the appellate Barton patent LLC and this appeal from denial of claims 1 through 24, amended claims 1 through 24 of U.S. patent 5166533 and reexamination. The Board of Patent Appeals and Interference has found that amended claims 1 through 24 of the 533 patent are unpatentable under 35 U.S.C. section 112 paragraph 1. You may assume that we have brought ourselves up to speed on the background. I'll come right to your arguments. Thank you, Your Honor. Your Honor, it's our position that there's no substantial evidence in the record to support the Board's finding that the disclosure of the 533 patent lacks sufficient support in the specification for the amendment of the claims to add the word directly to describe how the transfer of funds occurs between an individual's accounts. There's several portions of the patent that demonstrate direct transfers and provide written description support for that direct transfer. The first I'd like to point to is figure 6. Figure 6 of the patent is described in the specification at column 4, lines 11 and 12, and that appears in the Joint Appendix at page 829. It's described as a complete schematic diagram. Figure 6 says from debit credit provider to savings program provider. If the word had, instead of provider, if the word had been account, then it would track the claim. But it doesn't because the account requires it to go directly to a savings program account, directly to an account of the savings program. The savings program provider, though, could have multiple accounts, and it doesn't necessarily have to go directly into the savings program account that is designated for the individual. It could just go to the savings program provider and then be moved into the individual's account. That's the problem. That's the government's argument, I understand. But the savings program provider is described in the specification as the bank where the individual's savings account is located. I agree, but a bank is not the same thing as the individual's account, right? Sending something to the bank is not the same thing as putting it in their account. That's correct. The transfer of funds goes to the bank where the account is located and goes into the account. But there's no intervening accounts or structures between that transfer where funds are collected, accumulated, distributed, interest applied, like in the BRIC 191 path, which was cited extensively in the reexamination proceedings. You're saying that there is no intervening account, but Figure 6 doesn't demonstrate that. Figure 6 only says send it from one provider to the other provider. We don't know what those providers are necessarily doing with it when they get it. This figure, how does it support the idea that the savings program provider is immediately depositing it right into the savings program account? Well, there's no other description as provided other than it goes from the individual's debit credit transaction, which is the deposit count. That's number 26 in the figure, and it goes directly to number 28, which is the savings program provider for the individual's savings. When you say nothing else is disclosed, the government says that column 6, lines about 11 through 16, that it discloses taking the IRA contribution, forwarding it to the main IRA database kept by the bank or financial institution. That would be the savings program provider. So they say the IRA contribution is forwarded to the bank where the savings account is located, but they don't say that it's deposited straight into the savings account. They said it's first sent to an IRA database so that it can then be displayed to the customer's account for record. The IRA contributions are then sent to an individual investment account, then sent. That's two different sets. There's one sent to the savings program provider, and then there's the and then sent to the individual's account. It certainly sounds like two steps. It sounds like two steps, but it's really not. And we explain this in our brief. There's two different things going on here. One is the transfer of money from account to account. The other is the transfer of data to be displayed in a database. Where in this patent does it talk at all about a transfer of data as opposed to solely a transfer of money? Well, let's take column six, for example, that we were just looking at. Column six lines 10 through 13 says the 1 to 5% contribution is forwarded to the main IRA database. It doesn't say data about the contribution. It says the contribution itself, the same contribution that is then sent to the individual's savings account. You may be right about theoretically how this is supposed to work, but then it's a poorly written fact, because in both cases you're referring to the thing that's being sent, that's the IRA contribution. I understand, but I think the critical part is the difference between a display and a deposit into an account. That 1 to 5% contribution that's discussed at column six lines 10 through 13 is to be displayed to the customer's account. The IRA contributions are then sent to an individual investment account that's aligned with the current banking and savings account. And this is consistent with the claim structure. Originally issued claim one, for example, says that the deposit's billed from account to account. It doesn't say anything about the display of database, or sending information to be displayed in a database. Maybe you can try one more time, because you cited column six lines 11 to 16 in your brief, but when I read it I was shocked that you cited it because it seemed clearly to support the government. And as you're standing here talking, I don't understand how you think that it supports your position, because as I read the plain language, you have the IRA contribution forwarded to the main IRA database kept by the bank. That sounds like a place other than the person's individual savings account, doesn't it? Yes, that's the database where the data's displayed, not where the funds are deposited. So the funds aren't being sent? Correct. At that point in time, no funds are being sent. It's a signal representative. But there's nothing in here anywhere that talks about a signal, and that says the one to five percent IRA contribution is forwarded. So how is that a signal representing the amount of the contribution? Actually, in original claim one, as issued, there is a discussion of a computer to receive a signal representative of a payment amount from a third party, and that appears in column nine, lines 37 through 39. There's also in column nine. Right. Okay, that's great, though. But here, when you wanted to talk about a signal representative of a payment amount, you knew exactly how to do that. You referred to it as a signal representative of a payment amount. At column six, the point you pointed to, it says the one to five percent IRA contribution is forwarded to the main IRA database. It doesn't say the signal representative of the payment amount of the one to five percent contribution. It says the contribution itself. I understand, but it also doesn't say that the funds are deposited in the individual's account. In the next sentence, it talks about the account, and this is the discussion we have in our brief about the two different signal paths that occur here, where one is for data and one is for money. And there's a transfer of funds that goes from the individual's deposit account to the individual's savings account, and there's a transfer of data that gets displayed in the database that's kept. But sequentially, doesn't the display in the database happen before the money goes into the savings account? The display of data occurs before the funds go into the account, so that's an intervening step. It's not an intervening step in the transfer of the money. So what? Well, that's what... You served up a definition of direct, meaning without an intervening step or agency. That's correct. And we argued that there was no intervening account, no place where the money goes. It says without an intervening step. It seemed to me that the problem here was an overly broad definition of directly that you served up and the board accepted. What you were trying to do here by directly was to say not Burke. Burke was indirect because Burke had an intervening account, had a cookie jar where you deposited little bits of money until it got big big enough to move on to somebody else. And to get around Burke, you were trying to say we don't have an intervening account. That's correct. But instead of amending your claim to say that, you amended the claim to say we are direct, and by direct means there's no intervening step of any kind whatsoever. In the transfer of funds, it doesn't say that. The amendment to the term, to me, it's defining the term. What does directly mean? Right. It's a direct transfer of funds. That's what the patent is directed to. It's directed to a transfer of funds from a deposit account to a save-out account. It doesn't say without an intervening step, but it doesn't say without an intervening step to another account. It's just without an intervening step. Without an intervening step in the transfer of the funds, not without any intervening step in some collateral process that shows a display of data. That's not a transfer of funds from one account to another. That's a data display, and it's explained in the patent. That's what the case is all about, is did your disclosure after your amendment make it clear that what you were trying to say by directly was not birth, or whether you were saying, well, not any intervening step of any kind. And the board, to me, was reading it on the broad side because they said, well, we'll grant you your definition. And then you have a problem. And there's not, under the board's definition of direct, there's not going to be a direct transfer in any of these patents because there's too much collateral things happening. As you know. Yes, I understand. But I think the direct has to be read in conjunction with the transfer of funds. And it's the direct transfer of funds from account to account. That's the part. That's the missing element to me in what's stated in your disclosure, given the way the case is served up by the definition of direct. But I think if you read the entire disclosure, including the abstract, the originally issued claims, the portions of the specification that we point to throughout the brief, you never see anything other than a direct transfer of funds from account to account when you look at the transfer of funds. When you look at transfers of data, there may be something that intervenes between a transfer of funds. But that, as we point out in our brief, is on a different signal path from the transfer of the funds. But your original disclosure was broad enough to read on Burke. So your original disclosure would deal with an indirect transfer to an account. Well, we didn't think the original disclosure was broad enough to read on Burke, and we argued against that in the re-examination proceedings. But we ultimately amended the claim to further clarify and distinguish the claim from Burke. But Burke is a great example of what an intervening account or structure is. Burke has a clearinghouse account where funds are accumulated until they're sufficient enough to be distributed to other accounts. There's nothing like that shown in the 533 patent. So specifically, what is it when you ask for a remand on the basis of a new ground of rejection? Would you be explicit as to what you view as the new ground? Yes, Your Honor. There were actually two new grounds of rejection that we identified in the brief. The first was that the board found that in the specification of the 533 patent, transfers could have been performed directly or indirectly without an explicit disclosure of either, and that appears at Joint Appendix A-15. The examiner never made that argument in addressing the direct limitation. In fact, the examiner's reasoning for rejecting the direct limitation was just that the word didn't appear in the specification. There was never any real discussion of why there was no support in the specification. So here, the first new ground of rejection is that the transfer could have been performed directly or indirectly without an explicit disclosure of either. The second new ground of rejection is the car analogy that was used by the board that was never demonstrated by the examiner. We never had an opportunity to address that with the examiner. Okay, let's hear from you. I just want to thank you for your time. Thank you, Your Honor. Good morning. May it please the Court. This case presents a clear example of why our law needs a written description requirement. Ten years ago, when BART filed its patent application, they explained their invention conceptually and broadly as an automated savings fund, a way for a user to have little amounts of money sent automatically to their savings account. In fact, they specified the automated nature of their invention no fewer than 27 times in their patent. But not once did they say that the transfer was direct. But the board, in explaining its decision, said it really doesn't matter. Well, I think... And it's the new ground that was asserted. Well, let's be clear. There was no new ground. The grounds by the examiner, the grounds by the board, it's the same grounds. There's no disclosure of a direct transfer. The part that BART was citing to, the part of the board's decision, merely said, after BART urged the board, as it urged this Court today, to read the whole patent and somewhere in there find the disclosure, what the board said is, well, you don't specify that it's direct or indirect. So it's really both to the extent it's either. They're trying to get the breadth of their disclosure, and from the breadth they're trying to get to a description of something. Isn't that factually wrong? I mean, how else do you read column 6, lines 11 through 16? I don't see how you can say they don't articulate support for indirect if they wanted to claim it because it expressly says IRA contribution forwarded to an IRA database, then the IRA contribution sent to the individual account. That would be an indirect transfer as far as I can tell. So isn't the board, as a factual matter, wrong? Based on the way you also interpret the spec at column 6, lines 11 through 16. I think the problem with answering that directly is that the term wasn't used in the specification, so we don't really know what it means. Either this is direct or it's indirect. If it's either, it's indirect. How can it not be one of the two, right? Because it's ambiguous. It's a binary world. It can't say, you know, I choose color gray. Well, first of all, it is ambiguous. I think that, at best for them, it's ambiguous. I agree with Your Honor that it's one or the other. It's closer to direct to the extent we even know what direct, I'm sorry, indirect, to the extent we even know what indirect means because their patent doesn't describe one or the other. With respect to the binary nature of this claim limitation, it's always possible to reduce the universe of claim limitations to a binary nature where it's either is or isn't. I agree. I'm sorry. No, I disagree. I would say the same thing. Perhaps that's exactly what prosecution is about. Priority is cited. It looks as if some of the terms that you've used may read more broadly than now becomes apparent or prudent to limit the claims. You say, all right, I limit it to direct, but I don't have to worry about Berkeley anymore. Well, that would be true, Your Honor, if they had described both sides of the binary equation. If they had described it broadly, as the board itself says. Well, Your Honor, a broad definition, even a description that renders something obvious, as this court said in Ariadne, doesn't render it described per 112 First Paragraph. This limitation could have said where the transfers occurred during daylight hours or occur at night. Well, that's a binary thing. One or the other has to occur, but they disclose neither. They could have said where the transfers are in U.S. currency or not U.S. currency, whether they are certain protocols used or not, whether they're electronic or paper transfers. So you're saying that somebody with a claim that turns out to be a little too broad because of the cited references is prohibited from cutting back to that which does not include the reference subject matter? I'm not saying that, Your Honor, and I think in In re. Johnson's CCPA, the CCPA made clear that that's an appropriate thing to do. That's what they did? It's not what they did, respectfully, Your Honor. What happened in In re. Johnson was that an applicant had a number of subspecies, and then in order to get around the prior art, they basically excluded a couple of them, and the board said, well, you essentially created a brand new subspecies, and the CCPA said, that's okay. They're just narrowing their scope to some of the species that they did disclose to exclude others. There's nothing to prevent them from doing that. The problem here is that they didn't disclose a direct transfer. Now, arguably, they didn't disclose the details of any transfer, but Your Honor is correct, and the court, I think, is right, that with those two sentences from Step 6, if anything's disclosed, it's an indirect transfer. Well, that happens in less than a nanosecond. The transfer refers to the IRA contribution to the IRA database and then to the individual account. It's just how it moves. I don't know, Your Honor, if there's anything in the reference that talks about the speed at which it moves, and I want to clarify. No, but if you're saying that this absolutely is an inexorable two-step process and there's steps with it because that's what was described, things always work in sequence, no matter what. Well, if it works in sequence, it's beyond the scope of their description and their claim, because what their claim now says, according to them, is that directly without an intervening step, and what they've said here today is that Step 6, the first half of the Step 6, which they want to get away from as quickly as possible, is just the transfer of data and it's not the transfer of funds. This is a specific example for John Doe and his $200. It doesn't say this is the only way it works. It's the only way they describe it as working, Your Honor. They can't wait 10 years, find a prior art reference, and have their attorneys invent a new description or a new embodiment that they never had to begin with. And let's remember, in the Step 6 that they're focusing on so much, there's a step that comes before it, Step 5. And in Step 5, that's where the money comes out of the first account. So it's incorrect for them to say that the only transfer occurs in the second half of Step 6 because once we're through Step 5, the money's out of the account. It's gone somewhere. And now we have the intervening step where it's first sent to the institution where they say that's just a data transfer. And in the second step, after that intervening step, it's sent to the account. That clearly puts it beyond the direct definition that they've given and the one the board's adopted. And it's really the only one the board can adopt because this patent doesn't describe what they mean by direct or incorrect. It just doesn't. They can't take a broad disclosure and wait to see the prior art and come up with a new invention. That's what the written description doctrine is meant to believe. If this claim had said of the individual directly to a savings program provider of the individual, so the money was directly going to the savings program provider, not necessarily directly to the savings account, because that's a stopover, but directly to the provider, would this patent provide written description support for them? I don't think so, and I don't think if it said that, and that's what the claim meant, that they would even necessarily have gotten around prior art. No, they wouldn't. The prior art went to a central facility, which was not part of the savings program provider. It was not the same bank. The same bank didn't hold in Burt both of those components. So you're sending it now. It has to go to the same bank. It can't go to some third party for collection until it gets big enough to get moved. So it would have gotten around it. So why doesn't this spec support it? I don't know that I necessarily agree with how Your Honor has characterized Burt. It may go to a clearing house, but I think the problem with Burt is that it didn't get to the account holder's account right away, because bear in mind what Burt was doing. They didn't want to... So can you agree with me on Burt? Move on. Go to my point, which is if it said savings program provider, why in the world wouldn't the spec be adequately supported? Because the provider might not be depositing an account right away. The provider might for... Who cares? What does that have to do with getting over Burt? Nothing. Who cares in terms of the written description support? In the written description, figure six shows credit debit provider with an arrow straight to savings program provider. Why wouldn't that be adequate support if the claim just said it went directly to a savings program provider? There's nothing shown between the arrow at 26 and 28 on figure six. Why wouldn't figure six standing alone be enough? It might be enough for that claim limitation. We obviously don't have that in front of us, so I can't answer that question. I think the claim... Well, we don't have the... Well, in order to do the written description analysis, we need the claim. We need to know what they're trying to claim. And I assume what your Honor is suggesting is a claim that said it goes directly to the provider. And I think the court's question is, is there support for that? And my answer is, because the board didn't deal with that question, I don't know what the actual answer to that is. But I do understand the court's intuition that that potentially is supported by that figure. And it might be. The problem is, I don't think that would have gotten them around Burt necessarily. Because what's happening in Burt... Right, that's not what the claim says. The claim is much more specific than that. It had to be to get around Burt. That's why they amended the claim. What Burt is doing is keeping these little pennies and nickels and quarters in a bucket somewhere. Maybe in an intermediate bucket. It could be within a bucket. Right, so that the customer sees once a month the dump of all of the savings that they've made to these little deductions throughout the month. That's why it could be doing it that way. So to say that it just goes directly to the provider, I don't know that it would have gotten around Burt. But it may have been. The problem is that's not what it says. It says directly to the account. And the only language that we have in this patent anywhere that talks about the transfer from one account to another is in step six. And Mr. Grady said here this morning that what step six looks like is two steps. Well, if he's right, that step six looks like two steps, that's clearly substantial evidence to support the board's factual finding that there was no disclosure of a single-step transfer, which is what they need to overcome the rejection. So what would have happened if during the course of the amendment when the patentee was trying to get by Burt, he said, I'm going to put the word directly transferred in there. And by directly, what I mean is not Burt. I mean directly simply means not going into an intermediate account. It does not mean that there can't be an intermediate step of some sort, but it simply doesn't go into an intermediate account. And they had said that when they wrote up their response to the examiner and put in their amendment. Well, we might be... And then we're going to look at the written description we have here and say, well, does this written description show a possession of direct transfer as defined by the patentee? They may have been closer to having a description of that. The problem that they face is that they have a very, very strong prior art rejection. So they have to move from a continuum, a starting place where they have a description, their broad description of their broad claim, to an ending place where they have an actual prior art rejection. They've got to move down that continuum. They chose to move far enough, in their view, to get around the prior art, but they moved so far that they got away from their description. Now, if Your Honor is suggesting there was some intermediate language that maybe didn't go quite to this direct transfer directly to an account, but carved out a little bit less from their written description and perhaps went a little bit less to overcoming the prior art, there might have been some point in that continuum when they would have cleared the written description hurdle. But I suspect that we would be here talking about an obvious misrejection. Can I ask you a somewhat theoretical question that bothers me about this? Suppose there was no Burke, and this was the claim, not necessarily the original refile, but it's the claim, and it included the word directly, and then you all came along and said, no, no, you have to take the word directly out of the claim. There's no written description support. Patentee does a little happy dance because you're basically telling him he has to have a broader claim. Then he would take the word directly out, and he would theoretically be entitled to get this claim based on his written description support. Is that right? If there was no Burke, no prior art reference was creating an obstacle to it. Well, that's essentially what happened during the original prosecution. We didn't have the step of him putting it in directly and us telling him to take it out, but he got a broad claim that was consistent with his broad disclosure. What I just don't understand as a theoretical matter is why is it that a written description is adequate to support a broader claim but not a narrower claim? As a theoretical matter, it bothers me just theoretically that you're saying, Pattenhoff isn't saying, no, no, you can have a broader claim, you just don't have enough specifics to get this narrower one. Because then he could theoretically go assert the broader claims against someone who was doing it directly or indirectly, even though he describes neither. He could, Your Honor, but here's the problem, and here's how the Patten system functions. What happens is that the innovator who sees his disclosure can come in and make an improvement. They can come up with their own better way of doing this, their direct way, and they could actually get a patent on that. Now, you're right. You're saying that he could come in with his own reference that he cited against him, and now claim direct? No, Your Honor. I'm saying we're talking about two different people in the market. So Barton gets a broad patent based on their broad disclosure, and then a second person comes in, and they read that disclosure, and they came up with an improvement, say, the direct transfer model, and they get a patent on that. That might be patentable over this. Well, when that happens, that second patent blocks Barton's ability to practice that improvement, but at the same time, Barton's broad patent blocks the innovator's narrower improvement patent. That happens every day in our Patten system. That's what improvement patents are about. Well, that's an interesting theoretical situation, but you can't say that that applies here. He has a broad statement in the beginning of the transfer. The transfer takes place. Then he has this example with number six, where he says that he proceeds. The first thing that happens is that it is forwarded to the main IRA database, and then the second thing is that it goes to the account. As an example of the transfer, it doesn't say you can't go directly from one to the other, just as in my example. You take the one to five percent, and here it goes. So you're saying that someone else, but not this inventor, could claim the direct transfer? I'm saying that someone who invented a direct transfer and who described the direct transfer. You're saying that it's patentable over this disclosure, but that's not what Barton is trying to do. He's saying that's part of my disclosure. Well, respectfully, Your Honor, he is trying to say it's patentable over disclosure of an indirect transfer.  not over his own disclosure. But his disclosure, he doesn't describe the direct transfer at all. That's the problem. All I'm trying to do in answering Judge Moore's question... Well, that's undoubtedly why the board went to written description rather than overruled the obviousness. Anticipation. Yes, because neither party describes the direct transfer. Neither Burke nor Barton. The court has no further questions. Okay. Any more questions for Mr. Kelly? Thank you, Mr. Kelly. Mr. Grady, you have a little time. Just two minutes. Thank you, Your Honor. The direct transfer was described in original issue claim one, where it said automatically contributing funds from a deposit account of an individual to a savings program account of the individual based upon debit transactions made by the individual. That's a direct transfer from account to account. Was Burke automatic? I'm sorry? Was Burke automatic? Burke was... Yeah, Burke was also... Burke was automatic in the sense that there was a debit transaction. I think the way I understood what you were saying is because of the word automatic, that means it's direct. No, it's because the funds went from a deposit account of an individual to a savings program account of the individual. One account to the other, direct. No intervening step or agency involved at all in that transfer. That's in original issue claim one. In the original prosecution history, there was... Was that part of claim one president filed or was that... Yes, ma'am. Okay. Original claim one that issued with the 533 patent was the original claim as filed on the day of the filing and not amended? No, it was not... I'm sorry, I misunderstood your question. I appreciate that. Please understand that. Yeah, no, that original claim one was... That's originally issued claim one, not as originally filed. So that's a claim that appears in the printed patent that is up on appeal today, that originally automatically contributing funds from a deposit account of an individual to a savings program account of the individual based on debit transactions. You understand our confusion because if this was originally filed claim one on the day of filing, then it could itself provide the written description support you're looking for. Right. The claim was discussed during the original prosecution history. And in the prosecution history, this is reproduced at the joint appendix at page A1009 to 1010. There's a discussion of a prior art reference and the patent fee says, in neither aspect of the Fernandez-Holman disclosure is money transferred from a deposit account to a savings account, nor is the money transferred from the deposit account to the savings account, the customer's money that has previously been deposited. It is therefore submitted that the Fernandez-Holman teaching would not leave one's skills in the art to the requirements of applicant's claim 11, particularly as amended. And claim 11, as amended, included the phrase computer usable code and having computer readable program code means embodied therein for automatically contributing funds from a deposit account of an individual to a savings program account of the individual based upon debit transactions made by the individual. So this is in the original prosecution history. Prosecution claim 11 describes that account-to-account transfer of money and there's a discussion of the need to have a direct transfer from account-to-account in the prosecution history in overcoming the prior art. Thank you. Thank you, Mr. Grady. Thank you, Mr. Kellett. The case is taken in this division. 21, Spectralytics Incorporated against Cordis Corporation and Norman Noble. Mr. Carlson. Thank you, Your Honor. May it please the court. This is the Enhancement of Damages case where the willfulness was based exclusively on the defendant's pre-suit conduct. The case was here earlier and you remanded it on account of the fact that the district court judge discounted that pre-suit conduct and on remand the district court judge again discounted that conduct. With respect to Noble, the court held that it was not reprehensible for Noble to have ignored the patent because of the fact that Noble had received an indemnification from its largest customer, Cordis. If Noble had investigated the patent, it might have decided not to manufacture it, in which case Cordis wouldn't have had a supplier and there wouldn't have been any infringement. But it didn't do any investigation whatsoever. It totally ignored the patent. And there's absolutely no authority giving a party a pass on enhanced damages because it has been identified with respect to actual damages by its customer. In fact, giving a party a pass on enhanced damages violates the purposes and the objectives of enhanced damage law. And we ask that the case be remanded back to the district court to consider specific enhanced damages against Noble. Now as to Cordis, there again was a discounting of the pre-suit conduct. Here the court ordered enhanced damages of $500,000, a 0.02 multiplier of actual damages. Well, that amount of money does not punish Cordis. And that amount of money will not deter Cordis from doing anything at all. And it resulted from an erroneous application of several of the read factors, which we discussed in our brief. But I'd like to talk about read factor five, which is the closeness of the Willfulness case. Here the district court judge did not even consider the closeness of the Willfulness case. If he would have considered it, he would have looked at the evidence that spectrolytics seriously even until the lawsuit was filed. If he had considered that evidence, he would have considered the evidence of both objective and subjective of the reckless behavior of Cordis prior to being sued. But he didn't do any of that. Instead what he did was to say, well, this case when it was tried was close. And he substituted that for looking at the closeness of the Willfulness case. Now Cordis will say, well, there are plenty of cases where the court looks at the closeness of the case that's tried. And they are. And in Seagate, you distinguish between pre-suit and post-suit Willfulness. And you said in the case of post-suit Willfulness, a reasonable defense on the merits will tend to defeat a claim of Willfulness, where the Willfulness is based upon post-filing conduct. And that's because in that case, the time frame and the evidence are the same. In our case, the evidence was based upon pre-filing conduct. And the time frame for that evidence is completely different for that from when the case is tried. What happened is that the case was submitted to the jury. They were given the Seagate instruction. And they were given further help, as you, Judge Newman, suggested ought to occur. Even if the district court erred, as you're suggesting, by considering the closeness of the case in the infringement suit, even if that's true, he went on. After he did that, probably in response to your argument, he considered the closeness of the infringement validity cases. And then he said, finally, even if the court were to consider only the closeness of the Willfulness case, the court would indeed find the Willfulness case was close. And he went on for two paragraphs to explain why that is. Why isn't that clearly an alternative finding that absolutely supports his closeness of the case analysis? He did both. He didn't want to fall prey to the error on appeal that you're possibly pointing out. So he went ahead and analyzed them the other way as well. With all due respect, Your Honor, I don't think he did. What he said was, I'm going to do that. And then when he started to do it, what he said was, that I'm finding that the case, when it was tried, was close. As I said, he didn't examine the evidence that caused even he to say that Cordes didn't take spectrolytics seriously until the case was filed. If he would have examined that evidence, he would have decided then whether the case was close when it was filed. If he would have examined the objective and subjective evidence prior to filing, then he would have done that. He would have considered the closeness of the Willfulness case. But in that paragraph where he said, I'm going to do it, what he has said in the prior paragraphs or two is that they are bound together. He did not understand Seagate. So are you suggesting that the Willfulness allegations that you made don't extend into the period of time once the litigation was filed? Oh, absolutely. What happened in the Absolutely. Absolutely. I'm suggesting that. Or they absolutely do extend. No, absolutely. I'm suggesting that. What happened I still don't understand whether you're answering my question yes or no because of my negative in my question. So are you saying the Willfulness period, what exactly in your mind is the Willfulness period of time? Prior to the filing of the case. Once the case was filed, you're not accusing any infringement that occurred after the lawsuit as being willful? That's correct. OK. Well, so then your .002 number or whatever it is is woefully wrong, right? Because of the $22 million, when I look back at damages, most of those damages were attributed to sales that occurred after this lawsuit was filed. So if you're looking at what the multiplier is for Willfulness, don't you have to look at the only damages period which is available for Willfulness? Well, I respectfully disagree. Most of the damages weren't after the case was filed. Most of them were before. What is the breakdown? If you're going to come up and give us a multiplier and say the district court judge only awarded 0.2% enhanced damages, then don't you think the compensatory amount you're looking at ought to track exactly with the Willfulness period? Well, if you take out post-filing, maybe it'll go to 0.3. Most of the damages were pre-filing damages. But they continued the activity, did they not? Yes, they did. Yes, they did. I'm trying to understand why one would draw the line that that we're discussing. Well, I'll tell you why. The jury was given the Seagate instruction, and they were told that as a part of that, they should examine the objective and subjective evidence considered from the perspective of a reasonable person in the defendant's position acting in accordance with fair standards of commerce. And the first thing they did was they sent a note back to the judge. And they said, when do I do this? When do I look at whether this person was reasonable? And they suggested five different times. The judge called the lawyers up and spoke by telephone, and we told the judge it ought to be the time prior to the filing of the case. So the judge then went back to the jury and gave them an instruction that said that the willfulness period in this case is prior to the filing of the case. Willfulness was based exclusively on that time frame. This was discussed, I think, at the very beginning of our reply brief. We get into the facts relating to this. As far as that jury instruction, you'll find that at appendix 329 and 1297. So the point is that the closeness of the case had nothing to do with the willfulness. They were two different time frames. And the problem with what the district court judge has done and the effect of that is that it will encourage defendants like Cordes to recklessly disregard the rights of others because they know two things. One, if they do that, a lot of these people will go away. Spectralytics was a $2 million a year in sales company. Cordes was a $50 billion a year in sales company. When Cordes said to Spectralytics, no problem here, guys. And they totally ignored the patent. Most companies like Spectralytics would have walked away and Cordes would have ended up stealing their intellectual property. The second thing that they know, based upon what the judge has done here, is that if they are ever sued by the Spectralytics of the world, if they're tagged with willful infringement, they can escape enhanced damages by showing that they're putting together a close case on the merits. And I'll guarantee you that a $50 billion a year company can do that. They can make a case look close. In fact, in this case, they brought together 15 very fine lawyers. And their mere gravitas caused our district court judge to believe that this case was close. But it wasn't close. It was not a close case. A case is not close on the merits where, on validity, one of the elements of the invention is not even in the prior art. And the defendant's expert testifies that the prior art teaches away from the invention. And a case is not close on the merits on non-infringement where your non-infringement argument defies common sense. It defies common sense for them to try to tell the jury that a tube that fits within a bushing is not smaller than the bushing, despite the fact that the tube fits in there, slides, and turns in the bushing. But the judge thought their argument that the case was close. And even analyzing whether the case was close, it's very interesting to see what he relied upon. He said the case is close. It's evidenced by the fact that I would have decided it the other way. That's not evidence. Evidence is the prior art, secondary considerations, et cetera. So the closeness of a case is not something that nerves their benefit. And with respect to Read Factor 5, it should not be considered because it involves a different time frame altogether. Was the closeness of the case adjudicated in the previous appeal? Well, not specifically. I think that there are many things that were decided that inform us on that point. On our previous decision, actually, you challenged that in your cross-appeal, I believe, expressly. I know you did. Yes, we did allude to that. But I don't think it didn't. You had a separate section in your brief. Yes, we said there that the case was not close. I don't think that this court weighed in on that. OK, let's hear from the other side, Mr. Carlson. Thank you. Thank you. OK, Mr. Dillerton, you're sharing your time? I am sharing my time. I'll be nine minutes for Cortis. And then Mr. Niehaus will have the other six minutes, Your Honor. This is the second time this case is in front of this court on the issue of willfulness. The first time, the district judge had discounted the second Read Factor, which involves consideration of the patent in suit. And this court held that it was error to discount that factor, that that factor cannot be ignored, and that the determination of willfulness depends on the egregiousness of the defendant's conduct in light of all the facts and circumstances. The case was then remanded. And on remand, the district court did exactly what this court said it should do. The district court considered the egregiousness in light of all the facts and circumstances. It awarded $500,000. It changed the result. The earlier appeal, there had been no award at all. And in the second appeal, the court awarded $500,000 because it was now explicitly, although Mr. Carlson says that the district court did not consider all, did not consider factor number two and discounted it, the district court said exactly the opposite at 8-5. He said he was considering every factor without discounting any of them. And considering all the factors the district court determined, and again, I'm quoting the district court at 8-12, the court's conduct was not particularly egregious so that an adequate sanction was $500,000. The reason the court determined that sanction, that that result rested heavily on the court's views as to the closeness of the case. And before I get to the closeness of the case, I would just like to touch briefly on one other issue, which relates to Spectralytics' assertion that Norman Noble got a free pass. That's what I heard Mr. Carlson say in his argument, that Norman Noble was given a free pass. Norman Noble didn't get a free pass. This is something Mr. Niehaus is going to be addressing. But the court's opinion is clear. When the judge uses the term portis in his opinion, he states in footnote one on page A2 that he's using the term portis to refer to both defendants so that when he imposes an award of $500,000 on portis, that is an award on both defendants. That's confirmed by the judgment, which gives Spectralytics $500,000 for defendants as apostrophically plural misconduct. Nobody got a free pass. The determination that court's conduct was not particularly egregious on this record was amply supported by the facts and certainly a permissible exercise of the district judge's discretion. The judge sat through pretrial proceedings, presided over the trial, and after doing so was of the view that portis had presented strong defenses both on infringement and on willfulness. And there's no basis for challenging that termination. The challenge that Spectralytics offers is basically based on two arguments. Their first argument is a legal argument, the argument that the willfulness determination... I'm sorry, that the determination and closeness of the case only relates to willfulness, not a determination of the merits. And I think that argument fails for three reasons. First, it fails because, as Judge Moore noted, this judge expressly considered not only the closeness of the case on infringement and the closeness of the case on willfulness, he also considered the closeness... I'm sorry, the closeness of the case on infringement and validity. He also considered the closeness of the case on willfulness, and he expressly found, at pages 812 and 815, that this was a very close case, not only on infringement, but also on willfulness. And that determination is, frankly, unassailable. The argument that a district judge should not consider the merits issues on willfulness and infringement has two basic problems. One is... Let me tell you my problem with the case. Sure, sure. Having sat on the prior one, I didn't think it was close on infringement, but the district judge did. The district court therefore announces that there will be a very modest penalty because of the way he sees the case. And I've been arguing with myself as to the amount of deference. Is that entitled to total deference as a matter of discretion? If I could just... One point, Your Honor. Your Honor could not have reached a view on infringement that the infringement case was not close because infringement was not subject to the prior appeal. We didn't appeal the infringement issue. We had a limited number of issues to appeal. The issue of validity. First of all, there are two issues that he decided were close issues after hearing all the evidence that were both close. This court does not make it... This court has repeatedly recognized that the determination of whether an issue is close or not is a determination that's best suited for the district court to make. My inquiry was related really to the amount of deference. Is this a matter of total deference? It's substantial evidence. This court has repeatedly held, Amstead and other cases, that the judge's determination on the closeness of the case is entitled to deference, and that's based on the fact that the judge sits in the court and observes the demeanor of the witnesses. This court doesn't. And so the review of the district court's determination on there being a close case on willfulness, I'm sorry, on invalidity, is something that's only reversible for clear error. And there is only clear error if there's only one permissible view of the evidence. If reasonable fact-finders could view the evidence two different ways, then as a matter of law, that is not clear error. So while Your Honor might and has told me you do view the evidence differently than the district judge, that's not enough to overturn the district judge's ruling. You'd have to come to the conclusion that no reasonable person could reach the conclusion that the district judge reached. If a reasonable person hearing that evidence could find that there was a strong case on validity, a case that would have persuaded a reasonable fact-finder... Aren't you describing the substantial evidence standard, not the clear error standard? The clear error standard has been described by appellate courts and Supreme Courts as if there are two permissible views of the evidence, in fact, I judge you, that's one. Right, that's different from whether no reasonable person could reach the conclusion. That's absolutely right. In applying the clear error standard, you're not required to view the evidence in the light that is favorable and ignore other evidence. But where there are two permissible views of the evidence, then it's not clear error. You say that we owe some deference to the district court judge's determination that this case was closed? Correct. And so what's our standard of review? What's the test? Is it abuse of discretion? You review the fact determination that it was a closed case. That determination is reviewed for clear error. The balancing of all of the nine greed factors is reviewed for abuse of discretion under CYBORG and ODETICS and other cases. And certainly, the district judge found that there were closed cases, a closed issue on infringement. Mr. Carlson belittles that. That is a fairly straightforward issue. The claim required that the bushing have an outer diameter that's sized to be slightly greater than the inner diameter of the tubing that goes into it. And the testimony of trial was that what that requires is what's called in the art of running and sliding fit. And to have a running and sliding fit, you need a certain clearance between the outer diameter of the tubing that goes into the bushing and the bushing's inner diameter. And we simply didn't have that. We had a bushing that's made of Teflon. And what the Teflon allows is to have tubing that has exactly the same outer diameter as the inner diameter of the bushing. So rather than being a gap, there was an exact identity. They were sized to be exactly the same, not sized to be slightly different, as the patent requires. And we recognize that the jury found against this on that. But the judge heard all the evidence. And he came to the conclusion that most reasonable juries would have ruled in their favor on that issue. And in light of his views on the closeness of the infringement issue and the invalidity issue, he found that there was a closed case on willfulness as well. Because willfulness under the first prong of Seagate is tied to the closeness of the merits issue, where there's a reasonable defense on the merits, then that necessarily defeats willfulness under Seagate. What I heard during Mr. Carson's argument was an effort to completely rewrite the willfulness standard in a way, to my hearing, would completely eliminate the first prong of Seagate for willful infringement that occurs prior to the commencement of suit. And that's just not what Seagate is about. Under Seagate, there aren't two separate standards. The objective prong applies. The two prongs of Seagate apply to both portions of the willfulness period. Excuse me. I'm listening. Yeah. I'm just listening. Yeah. OK. Do you want to continue? Sure. Sure. Well, I don't have a lot. Well, I don't want to impinge on Mr. Niehaus this time. So if I were to do that. You're all right. You are doing that. I'm sorry. Thank you. Good morning, Mr. Niehaus. Good morning. Thank you. My name is James Niehaus. I represent Norman Noble. Norman Noble did not get a free pass because of the indemnification clause. If Norman Noble had been given a free pass, there would have been no need for the district judge to apply the read factors to Noble's conduct. But if you review the opinion, that's exactly what the district judge did. Factor number one, copying. There's no allegation in the case that Cordes ever had access to Spectralytics' invention. There's no allegation that Cordes copied the invention. The allegation was that Noble copied. The district court spent a page of its brief, of its opinion, analyzing and concluding that the evidence failed to show that Noble copied. Spectralytics then spent five pages of its fact section, two pages of its argument, and a portion of its reply brief, arguing that the district court erred in how the district court applied that factor to Noble's conduct. By making that argument, they're conceding that the district court applied the read factors to Noble's conduct and did not give Noble free pass. Can we get to the bottom of the indemnification point? Let's assume, for purposes of argument, that you're right as to all of the read factors except perhaps for two. What was the effect of the indemnification on the district court's assessment of Noble's satisfaction of the second element of read? Ultimately, the district court weighed that factor against Noble. It would be an interesting issue. Where do we see that? In the district court's opinion, where the district court said read factor number two weighed against the defendants. Noble got weighed by that, but not to the point of assessing damages. No, but the district court did assess damages, $500,000 against the defendants. Against Noble, personally. Noble was indemnified. The indemnification is irrelevant to the award of damages. Damages were awarded against the defendants. Read factor number two, the math was. What do you do with an opinion that says under read factor two, without ever talking specifically about Noble, all the conversations about Cordes? He says, we find the second read factor weighs advantages.  I mean Cordes and Noble. Correct. And then over on page A of his opinion, when talking about size and financial condition, he says, under these circumstances, I see nothing particularly reprehensible about the fact that Noble didn't launch an independent investigation, but instead relied on Cordes. Because of the indemnification. Because of the indemnification. He said, Noble relied on Cordes' investigation. There's nothing reprehensible about that. He says, Noble relied on Cordes' indemnification, so that it doesn't matter. No, he said that Noble relied on Cordes' investigation. What evidence is there of that? Because there's no evidence in the record that Cordes did any investigation. So how can Noble rely on a fictionary saying? Well, there is evidence in the record that Cordes did an investigation, because there's Mr. Colletti's letter, which is discussed extensively in Cordes' brief. And incredibly superficial, and doesn't really say anything. So is that what you relied on? We relied to our peril. And it came back to haunt us, because now we've been assessed $500,000 in enhanced damages, because we relied on Cordes. You're saying that the enhancement is assessed against Noble, not against Cordes? It's assessed against both of them. It's assessed against the defendants. And I don't understand. You've told us to ignore the indemnification, or you're telling us that there is no indemnification? No, I'm not telling you to ignore the indemnification. I'm saying there is no indemnification. There is an indemnification clause. So it doesn't matter, does it, whether Noble is included or not in the willfulness? Oh, I think it does matter. Why? It doesn't cost you anything. Well, um. As a matter of commercial ethics, we set that aside. I think the commercial ethics here really may not stand the light of day. But as far as the issue of indemnification, Noble has no risk, do they? Well, certainly Noble has risk when you rely solely on indemnification. Only on the risk that Cordes doesn't have any money. That's correct. Is the indemnification clause enforceable in Ohio? The indemnification clause is enforceable in Ohio for damages. As to whether it's enforceable. If Cordes refuses to pay the award, and the award is sought from Noble, then it is unlikely in Ohio that Noble would be able to enforce the indemnification clause against Cordes. I don't understand how you can say that Noble was sanctioned $500,000. The opinion itself has to be read as a whole. And at page 14 of the opinion, in the conclusion, it says, on balance, the court finds that Cordes should be penalized by an award of $500,000 in enhanced damages. Although this amount is small compared to Cordes' revenue, yada, yada, yada. That's the conclusion of the entire thing. I do see in the order it says, plaintiff speculates shall take enhanced damages amount of $500,000 for the defendant's willful infringement. But I don't see how that is attributable to Noble. You have to read the entire opinion together. And the opinion taken as a whole is clear that only Cordes is on the line for the $500,000. So I don't see how you conclude that Noble would somehow assess the $500,000 enhanced damages. Well, because in footnote one, the court said Cordes means Cordes and Noble. And so there are times in the opinion where he used Cordes. There are times in the opinion where he used Cordes to refer to Noble. Without separately specifying Noble, there are times in the opinion where he used Cordes to mean both Cordes and Noble. We said in the opinion, we find that this sum adequately penalizes Cordes. That's at the top of page 14 of the opinion. Yes. And they have also determined that there is no need separately to penalize Noble. There's no need to enter a separate and additional award against Noble, is how I've read that opinion. It also says in footnote one that Cordes agreed to identify Noble. Yes. It doesn't look as if the court thought that there was anything further outstanding that he needed to do or say. But then he goes on in the opinion to evaluate read factor number seven, for example, remedial steps taken. He specifically references remedial steps taken by Noble to cease use of the little use they were still making of the infringing device shortly after trial. He went and evaluated each of the factors as to Noble. If Noble was getting a complete free pass, there was no need for him to do that. And yet that's what he did, copying only Noble's conduct that he's talking about. And yet that becomes a very important part of his opinion, as well as their appeal. So he didn't give Noble a free pass because of the indemnification. OK. Any more questions? Any more questions? Thank you. Thank you, Mr. Neal. Mr. Carlson. With respect to Noble, we ask that the court separately assess punitive damages against Noble. And the court said at page eight of its opinion, appendix page nine, the court rejects that, assessing a willfulness damage against Cordes and Noble. So there was willfulness damages ordered. But we all know, as a practical matter, what that means in the real world here. And it also means, we know, that Noble is not going to be paying any money. Now, are there two boat-independent trialings every day liable for the $500,000? I don't know. But here we've got a $50 billion company who didn't even ask for a supersedious bond on this appeal. But that size just sets the prediction. We didn't talk earlier about whether or not the district court erred by taking into consideration the size of the royalty when it dialed up the punitives. Didn't the district court sort of nod and say, well, the actual royalty was kind of high. And I believe we have a couple of cases that suggested that it's all right for a district court judge to dial down enhanced damages if he thought the action were dialed up. Well, actually, the royalty rate was not high. The royalty rate was about as low as you could go. But this is in the mind of the judge. Yes. Our expert testified that 20% royalty would be realistic. I understand, but the judge didn't see it that way. Well, Your Honor, what would we do if the only issue here was the $500,000, which is both noble and courtesan, maybe on the hook for it, as a matter of law. And you say, well, the money just isn't a high enough number, given what we know about the damages here. And the judge said, I just think the actual damages came in a little higher than I thought it should have been. I'm going to accept it. And I'm going to dial the impunities down on account of it. Well, of course. Am I going to be a reverse lawyer? I don't know. I don't know that there is a case. They cite the Reese case. Well, there's language. There's language. There's language there. There's a case that blesses what happened below. And if the lawyer is just saying, well, that has to have been holding, because we sustained what the district court did. But it wasn't the holding in that case. And I think that if that were the issue, we would have to brief it quite a bit more than we did in this case. But to a certain extent, this goes to whether we should defer to the district court judge. And I think we should take into account the fact that from the very beginning, this district court judge didn't like this patent. And he said so. In the summary judgment ruling, where the issue is whether there are genuine issues of material fact, he said that Cordes is going to win. That's not an issue. It was totally gratuitous. During the course of the case, he continuously said that Cordes had a very good argument on obviousness. The fact is, he didn't like this patent. The jury totally disagreed. He did his job impeccably. But despite thinking Cordes was going to win, he didn't grant summary judgment. Despite thinking Cordes should have won, he didn't overturn the jury verdict. I agree. He did his job impeccably. He never had his own preconceived notions about how the case should come out, because he sat there and heard the same evidence everyone else heard. But he left intact what the jury did at all times. Yes. I think that it has to be said that in the course of a trial, a judge makes hundreds of decisions. And we're not talking about a lot of errors here. What we're talking about is a decision on which he had discretion. And when he had discretion, he went the other way than what the jury did, because he felt from the very beginning that the case should go the other way. That's not an error of law, but it is an error of discretion, we believe. Because the closeness of the case was not an actual factor in this case, where the willfulness was based upon, and exclusively based upon, pre-suit conduct. The jury asked, when am I to decide the objective and subjective criteria? They were told, pre-suit. They asked about other periods. They were told, no, it's all pre-suit. What does it matter whether the case is tried? Could be close. Again, as I say, if you affirm what the district court judge said at that point, the district court judge was saying, both these parties laughed up. They made a terrible investigation. Their conduct pre-suit earns them liability for enhanced damages. So he's got an equation here. He's got nine factors in the equation. He says, if one of them, both of them were, I'd say, they're both bad. And I don't say, I'm not making your reprehensibility, bad hat, white hat, black hat, or noble, because they were sort of like a wholly owned subsidiary. They were manufacturing, and they were relying on noble. But he says, I take all the other factors together, and I add them up. And one against each none is enough for a small amount. Well, the amount is. Why is that reversible? Well, what is reversible is not so much that point there. If he had not made other errors, and it's an issue of discretion, all he would be able to point to is his early issue on this patent that he expressed earlier. But what we're saying is he committed errors. He committed. The last time the error was clear, it was on read factor 2, because he said it doesn't count. I went back, and now he did read factor 2. Right. And you're not arguing he made a mistake on read factor 2. Well. Really? Well, we are in our brief. But my main point here is. On which factor? We send it back this time. What are we telling him to do? Tell him this time to take a look under read factor 5 of whether the willfulness case was close. That this issue about whether the case that's tried was close is not a read factor in this case, where the willfulness was dependent upon pre-filing conduct. Now, I'm not saying you can't consider that fact. Once you consider it. I already did figure it. I figured it out under read factor 2. I'm sorry? I thought the district court judge was saying, I already figured that out on read factor 2. Well, you know, I can't tell you what was going through the mind of the judges when they put together the Reed case. I do know that what they purported to say was, I'm going to pull some cases from the prior case law that show ways that the court has decided whether to enhance damages. So they pulled all these cases together and they put them in some categories. Do they overlap? I don't know. They probably do. And maybe the judge found a little bit of overlap. But in the case of read factor 5.